NORTH CAROLINA HUMAN RELATIONS COUNCIL, ON BEHALF OF PATTY P. LEACH v. WEAVER REALTY COMPANY/D.B.A. WAKEFIELD APART-MENTS, ALVIN R. BUTLER, PRESIDENT, LEE ANNE WATSON, AGENT/ PROPERTY MANAGER AND APEX HOUSING PARTNERSHIP

No. 8510SC951

(Filed 18 March 1986)

1. **Constitutional Law § 20.4— N. C. State Fair Housing Act—intent required for violation—disparate impact—circumstantial evidence only**

   To prevail on a claim of violation of the N. C. State Fair Housing Act, a plaintiff must show that defendant refused to engage in a real estate transac-tion with plaintiff due to plaintiff's race, color, religion, sex or national origin, and statistics describing the disparate impact of practices or policies may be circumstantial evidence of prohibited biased conduct; however, if the finder of fact reasonably finds that a particular housing practice or policy is not motivated by considerations of race, color, religion, sex or national origin, then the particular practice or policy is not a violation of the State Fair Housing Act, no matter how disparate the impact of the practice or policy.

2. **Constitutional Law § 20.4— N. C. State Fair Housing Act—violation—proxi-mate cause standard applicable**

   The traditional proximate cause standard applies in actions involving violations of the N. C. State Fair Housing Act, and race, color, religion, sex or national origin must therefore be more than a mere factor in a defendant's decision not to engage in a real estate transaction.

3. **Constitutional Law § 20.4— refusal to lease apartment to black person—viola-tion of N. C. State Fair Housing Act—summary judgment for landlord improp-er**

   Evidence presented by plaintiff was sufficient to raise a genuine issue of material fact as to whether defendants discriminated against plaintiff in the leasing of an apartment because she was black, and the trial court erred in granting summary judgment for defendants. N.C.G.S. 41A-4(a)(1).

APPEAL by plaintiff from *Bailey, Judge.* Order of summary judgment entered 12 July 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 3 March 1986.

This is a proceeding instituted by the North Carolina Human Relations Council on behalf of Patty P. Leach pursuant to the North Carolina Fair Housing Act, North Carolina General Stat-utes Chapter 41A.

Plaintiff's prayer for relief includes the following:

A. Assume jurisdiction of the within action;

N. C. Human Relations Council v. Weaver Realty Co.

B. Grant compensatory damages to Plaintiff in the amount of FIFTY THOUSAND DOLLARS ($50,000.00) and punitive and exemplary damages in the amount of TWENTY FIVE THOUSAND DOLLARS ($25,000.00), along with all costs and all other relief as expressly provided under the State Fair Housing Statute;

C. Declare that the acts and conduct of the Defendants are in violation of the State Fair Housing Act, Chapter 41A of the General Statutes of North Carolina;

D. Permanently enjoin the Defendants, their agents, employees and all persons acting in concert with them from engaging in any act or conduct which has the purpose or effect of denying equal housing opportunities on the basis of race or color, including, but not limited to, the denial to rent, refusal to sell, refusal to negotiate, or to otherwise make unavailable equal housing opportunities on the basis of race or color;

E. Require the Defendants, their employees and agents to undertake an affirmative program to correct the effect of their race-based unlawful actions by establishing a program requiring, *inter alia*:

1. Posting in a conspicuous place in all property rental offices the fact that Weaver Realty Company is an "Equal Housing Opportunity" Company and otherwise display the Fair Housing poster prepared by the Council;

2. The establishment of a five (5) year audit program through which defendant would be required to maintain information in its records indicating the race of all inquirers and applicants for housing with the Defendants. Such audit process shall be monitored by the Council;

3. The implementation of an affirmative educational program and instruction on State fair housing law for all officers, agents and employees of Defendant, Weaver Realty Company;

4. The utilization of an internal audit system through checkers and the other internal audit devices for purposes of monitoring compliance;

5. The creation of an affirmative marketing program to encourage eligible minority homeseekers to secure housing in Wakefield Apartments and other of its rental properties in the State of North Carolina in order to achieve a racial composition consistent with the demography of the community;

6. Adoption and implementation by Defendant, Weaver Realty Company, of objective and uniform standards, criteria, and procedures for determining when vacancies exist and establishing priorities therefor, and for accepting, processing and selecting applications for tenancy in Defendant apartment complexes;

7. The inclusion in all Defendant, Weaver Realty Company, advertisements in all newspapers and other mass media for a period of five (5) years that its properties and apartments are open to all applicants without regard to race.

F. Grant any additional relief that the court deems just and equitable.

Defendants filed a motion for summary judgment supported by documents and affidavits indicating among other things:

1) Wakefield Apartments were financed by the Farmers Home Administration (FHA) and were subject to FHA regulations including a rule that families with fewer than four members cannot rent a three-bedroom apartment without permission from the FHA.

2) Weaver Realty had a policy of its own which provided that single parents who had children of opposite sexes, at least one of whom was over six, could not qualify for a two-bedroom apartment.

3) No exception to the family composition rules has ever been given to any Wakefield Apartment applicant regardless of race.

4) The family of the plaintiff, Patty Leach, did not meet the family composition requirements.

5) Lee Anne Watson, the defendant property manager had no authority to waive the family composition rules.

The evidence offered in opposition to summary judgment disclosed the following:

1) Ari Crenshaw reported statements by Lee Anne Watson, the resident manager of Wakefield Apartments, indicating that Ms. Watson rejected several black applicants pursuant to instructions from her employer to limit the number of black residents.

2) Terena Hancock stated Ms. Watson told her that Wakefield Apartments had a quota for black residents, but Ms. Watson would not accept any more blacks than required by the quota.

3) Michael Beatty stated Ms. Watson told him that she checked black applicants' backgrounds and did everything she could to keep blacks out of Wakefield Apartments.

4) Jacqueline P. Cottle, a white woman, posed as a Wakefield Apartment lease applicant with familial and financial attributes similar to the plaintiff. Lee Anne Watson told Mrs. Cottle that she did not meet the requirements for renting a three-bedroom apartment but stated that because Mrs. Cottle "appeared to be a nice person," Ms. Watson would "write Weaver Realty requesting special permission for the rule to be waived." Ms. Watson also told Mrs. Cottle that the family composition rules were her "weapon" for keeping out undesirable blacks.

5) Six percent of black Wakefield Apartment applicants and sixty-four percent of white Wakefield Apartment applicants were accepted by 30 March 1984. Over the same period of time, fifteen percent of black applicants and ten percent of white applicants were denied leases explicitly because of the family composition rules.

From an order of summary judgment for defendants, plaintiff appealed.

*North Carolina Human Relations Council, by Daniel D. Addison, and Attorney General Lacy H. Thornburg, by Assistant Attorney General Douglas A. Johnston, for plaintiff, appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by M. Daniel McGinn and Mack Sperling, and Young, Moore, Henderson & Alvis, P.A., by William M. Trott, for defendants, appellees.*

HEDRICK, Chief Judge.

This is the first case brought under the North Carolina State Fair Housing Act to reach the Appellate Division of the North Carolina General Court of Justice. Our Legislature modeled the key provisions of the State Fair Housing Act after provisions of the federal Fair Housing Act. Compare G.S. 41A-4 with 42 U.S.C. Sec. 3604. In light of the similarity between the two acts, the body of federal cases interpreting the federal Fair Housing Act is useful, although not controlling, in interpreting the North Carolina State Fair Housing Act.

Federal Courts have held that violations of the federal Fair Housing Act may be shown under two different theories. First, housing policies and practices motivated by racial discrimination violate the act. See, e.g. *United States v. West Peachtree Tenth Corp.*, 437 F. 2d 221 (5th Cir. 1971). To prove discriminatory intent under the federal standard, a plaintiff need not show that race is the sole or dominant motive behind the challenged policies or practices. Under the federal standard, it is sufficient for the plaintiff to show that race was a factor or a significant factor. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed. 2d 450 (1977); *Woods-Drake v. Lundy*, 667 F. 2d 1198 (5th Cir. 1982).

The second way of establishing violations of the federal Fair Housing Act is showing that policies and practices have a racially discriminatory effect, even absent evidence of a racially discriminatory motive. See, e.g. *Robinson v. 12 Lofts Realty, Inc.*, 610 F. 2d 1032 (2d Cir. 1979).

Plaintiff urges us to adopt the entire body of federal law interpreting the federal Fair Housing Act when interpreting our State Fair Housing Act. We refuse to do so.

[1] The "adverse" or "disparate impact" theory through which a plaintiff may show a violation of the federal Fair Housing Act using statistics, without showing racially biased motivation, is contrary to the ordinary meaning of the terms in the North Carolina State Fair Housing Act. The North Carolina Act prohibits any person from refusing to engage in a real estate transaction "*because of* race, color, religion, sex or national origin." We hold that to prevail, plaintiff must show defendant refused to engage

in a real estate transaction with plaintiff due to plaintiff's race, color, religion, sex or national origin. Statistics describing the disparate impact of practices or policies may be circumstantial evidence of prohibited biased conduct. However, if the finder of fact reasonably finds that a particular housing practice or policy is not motivated by considerations of race, color, religion, sex or national origin, then the particular housing practice or policy is not a violation of the State Fair Housing Act no matter how "disparate" the impact of the practice or policy.

[2] We also refuse to adopt the peculiar standard of causation adopted by federal courts in federal Fair Housing Act cases. We see no reason not to adopt the traditional proximate cause standard which the courts of our State have ample experience in applying. Thus race, color, religion, sex or national origin must be more than a mere factor in a defendant's decision not to engage in a real estate transaction.

[3] The only question for review in the present case is whether the evidentiary matter offered in support and opposition to the motion for summary judgment raises a genuine issue of material fact in relation to plaintiff's claim for relief under G.S. 41A-4(a)(1), which in pertinent part provides:

> (a) It is an unlawful discriminatory housing practice for any person in a real estate transaction, because of race, color, religion, sex, or national origin, to:

> (1) Refuse to engage in a real estate transaction.

G.S. 41A-3(7) provides that " '[r]eal estate transaction' means the sale, exchange, rental or lease of real property." Plaintiff contends on appeal that the evidentiary matter considered by Judge Bailey raises a genuine issue of material fact as to whether defendants refused to rent a two- or three-bedroom apartment to Patty Leach because she is black.

The evidence in the record discloses that the defendant, Weaver Realty Company, has two special rules regarding the rental of its two- and three-bedroom apartments. One rule, required by the Farmers Home Administration as a condition of financing construction of the apartments, provides that families with fewer than four members may not rent three-bedroom apartments without Farmers Home Administration approval. The other

rule provides that single parents who have children of opposite sexes, at least one of whom was over six, could not qualify for a two-bedroom apartment.

The record discloses that Patty Leach is a divorced black single parent with two minor children of opposite gender, both of whom are over six. In an affidavit, Mrs. Cottle describes a conversation with Lee Anne Watson, Weaver Realty's resident manager at Wakefield Apartments. Mrs. Cottle states Ms. Watson told her that the family composition rules were weapons to keep out undesirable blacks. Plaintiff may meet her burden of proof by showing that the facially neutral family composition rules used to deny her application were promulgated to discriminate against blacks. Mrs. Cottle also reports statements by Ms. Watson indicating that Ms. Watson would try to get the family composition rules waived for Mrs. Cottle, a white woman. Plaintiff may also meet her burden of proof by showing that she could have leased the apartment if she were of another race.

The evidence presented by plaintiff is sufficient to raise a genuine issue of material fact as to whether defendants discriminated against plaintiff in the leasing of an apartment because plaintiff is black. For the reasons stated, summary judgment must be reversed and the case remanded.

Reversed and remanded.

Judges WEBB and PARKER concur.